JINA L. CHOI (NY Bar No. 2699718)
SUSAN F. LA MARCA (Cal Bar No. 213251)
 lamarcas@sec.gov
ERIN E. SCHNEIDER (Cal Bar No. 216114)
 schneidere@sec.gov
JESSICA W. CHAN (Cal Bar No. 247669)
 chanjes@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| EADGEAR, INC., EADGEAR HOLDINGS LIMITED, CHARLES S. WANG, FRANCIS Y. YUEN, AND QIAN CATHY ZHANG, | |
| Defendants, | |
| LAURATA P. CHAN, | |
| Relief Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY OF THE ACTION

1. Charles S. Wang, Francis Y. Yuen, and Qian Cathy Zhang, together with Pleasanton, California-based defendant eAdGear, Inc., and Hong Kong, China-based affiliate, eAdGear Holdings Limited, operate a fraudulent pyramid scheme in violation of the securities laws.

2. Since December 2010, defendants have directly or indirectly sold to investors approximately $129 million in so-called "memberships" or "business packages" through

eAdGear.com, or simply "eAdGear," opening more than 66,000 accounts to tens of thousands of investors, principally Chinese investors, in the United States and abroad.

3. Defendants market eAdGear as a successful internet marketing and advertising company that uses search engine optimization ("SEO") technology they claimed to have developed to help paying clients increase the page rankings of their websites on various search engines. Defendants claim to share 70% of the revenue generated daily by this business with investors.

4. In reality, eAdGear's purported business is a ruse. Instead, well over 99% of the funds eAdGear has received have come from its investors, and eAdGear simply uses new investor money to make payments to – or to credit the accounts of – existing members in classic Ponzi scheme fashion.

5. Wang, Yuen, and Zhang have perpetrated this fraud by, among other things: installing Wang as chief executive officer, and Yuen as chief financial officer and chief operating officer of eAdGear, Inc., while portraying Wang's wife, Zhang, as an ordinary "member" who became hugely successful; creating a fiction of a business that has paying customers when it does not; and manipulating daily revenue distributions to credit investors' accounts, to make it appear as though eAdGear is operating profitably.

6. Wang and Zhang, as well as Yuen and his wife, Relief Defendant Laurata Chan, personally benefitted from the fraud. Defendants misappropriated investor funds to buy real estate in California and in New Jersey, using circuitous transactions and misleading entries in accounting records to disguise their use of funds. Wang, Yuen, and Zhang also misappropriated additional investor money, totaling approximately $1.3 million, by transferring the funds into their own personal bank accounts.

7. eAdGear is currently on the verge of collapse. As of April 2014, eAdGear had approximately $370,000 in its bank accounts, and at payment processors, but Wang acknowledged, in sworn testimony, that eAdGear owed investors approximately $5 million although the true amount the defendants owe investors is far higher. Wang and Yuen have stated that they hope to pay back investors principally by selling more memberships to new investors worldwide. To that end, eAdGear continues to permit anyone to register for an account on its website and to send eAdGear money.

8. The defendants have violated, and continue to violate, the registration and antifraud provisions of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

9. To address these violations and to halt their wrongdoing, the Commission seeks, among other things, a temporary restraining order, and an order preliminarily and permanently enjoining the defendants from continuing their unlawful conduct and enjoining certain conduct that facilitates their fraud. The Commission also seeks an order requiring defendants to disgorge ill-gotten gains plus prejudgment interest; and an order imposing civil penalties. The Commission further seeks orders during the pendency of this case, including an asset freeze designed to prevent the dissipation of the remaining funds defendants illegally obtained, to maintain the status quo.

## JURISDICTION AND VENUE

10. The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

12. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

13. Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. During the period described in this complaint, eAdGear, Inc. has maintained its principal place of business in Pleasanton, California, in this District. Similarly, the majority of eAdGear Holdings Limited's operations are conducted by eAdGear, Inc., and therefore take place in this District. Defendant Yuen also resides in this District. In addition, acts, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this District.

COMPLAINT 2

14. Under Civil Local Rule 3-2(d), this civil action should be assigned to the San Francisco and Oakland Division, because a substantial part of the events or omissions which give rise to the claim alleged herein occurred in Alameda County.

## THE DEFENDANTS

15. **eAdGear, Inc.** is a California corporation, established by defendants in 2011, with its principal place of business in Pleasanton, California. Its sole officers and owners are defendants Wang and Yuen.

16. **eAdGear Holdings Limited** is a Hong Kong, China corporation established by defendants in 2010. Its sole owners, officers, and directors are also Wang and Yuen. eAdGear, Inc. performs most of the business functions for both eAdGear, Inc. and eAdGear Holdings Limited, including supplying personnel, facilities, and responding to eAdGear investor inquiries. Most of the investor funds received directly by eAdGear are routed through bank accounts in the name of eAdGear Holdings Limited. eAdGear Holdings Limited regularly made payments to eAdGear, Inc. from such bank accounts to assure sufficient funding of the business operations.

17. **Charles S. Wang**, age 52, of Warren, New Jersey, is a founder and the Chief Executive Officer ("CEO") of eAdGear Holdings Limited and President of eAdGear, Inc. Wang was previously in the shipping business in a management role. He is married to Qian Zhang, another founder of eAdGear Holdings Limited and the company's chief marketer.

18. **Francis Y. Yuen**, age 53 of Dublin, California, is a founder and the Chief Financial Officer ("CFO") and Chief Operations Officer ("COO") of eAdGear Holdings Limited and eAdGear, Inc. Yuen previously owned an electronics business. He is married to Laurata P. Chan, Accounting Manager for eAdGear, Inc.

19. **Qian Zhang (aka Cathy Zhang)**, age 52 of Warren, New Jersey, is a founder and de facto officer of eAdGear Holdings Limited and eAdGear, Inc. She is married to Charles S. Wang, eAdGear Holdings Limited's CEO. During sworn testimony before the staff of the Commission in the investigation preceding the filing of this case, Zhang asserted her privilege against self-incrimination rather than answer questions about her role at eAdGear.

**RELIEF DEFENDANT**

20. **Laurata P. Chan,** age 54 of Dublin, California, is eAdGear, Inc.'s Accounting Manager. Chan is married to Yuen, one of eAdGear's founders and the CFO/COO.

**FACTS**

**A. Defendants Falsely Market eAdGear as an Internet Advertising Company.**

21. In December 2010 defendants first launched eAdGear.com. Through this website, and in direct solicitations, from December 2010 through the present, defendants have solicited investors, primarily in the U.S. and China, by falsely billing eAdGear as a successful internet marketing and advertising company whose services improve the visibility of its customers' websites in searches performed on websites such as Google or Yahoo!. Indeed, eAdGear materials used in meetings with potential investors include the statement, which is false, that "Google and Yahoo are partnering up with eAdGear for SEO services."

22. For instance, eAdGear's website describes its mission as "global advertising," and states that it "provide[s] vital internet tools to small and midsize companies who market their products and/or services online." To do so, eAdGear claims to have a unique "breezing" technology.

23. eAdGear claims to generate substantial revenue through these services, which it also claims to share with its investors – paying investors, or crediting their accounts with, 70% of the revenue purportedly generated.

24. As a key feature of the services purportedly offered, eAdGear claims to harness its "breezing" technology to increase the page rankings of its customers' websites by asking each of its thousands of "members" to view daily internet ads posted on its proprietary "Ad Rotator." By viewing the ads on the Ad Rotator, members help improve those advertisers' presence in searches, according to eAdGear.

**B. In Reality, eAdGear Is a Pyramid and a Ponzi Scheme.**

25. Although eAdGear claims to generate millions of dollars in revenues from its internet marketing or SEO business, it has no such business.

26. According to eAdGear's own records, it did not record any sales to paying customers until November 2012. Through December 31, 2013, eAdGear recorded only approximately $212,000

COMPLAINT 4

in sales purportedly to persons who were not also investors. But even that negligible amount was false, as the main "customer" believed that the recorded "purchase" was actually an investment.

27. Further, eAdGear's product (or service) is not designed to increase an advertiser's page rankings in search engines such as Google or Yahoo!, since the actions of eAdGear investors in viewing websites on the Ad Rotator is not communicated to those search engines.

28. Instead, eAdGear's real business has been to raise money from investors. Thus, eAdGear seeks out so-called "members," who pay between $300 and $6,000 to purchase a "business package" from eAdGear. Investors can, and do, purchase multiple membership accounts, in order to invest tens of thousands of dollars in eAdGear, and they do so with the expectation of profits from a passive investment.

29. An investor's "package" entitles the member to earn returns on the investment in two ways which, according to eAdGear, result in investors sharing 70% of the daily revenue generated by eAdGear's business. First, each investor's account is credited daily with a share – purportedly 30% – of the "revenues" supposedly generated from the collected effort of members' viewing advertisements on eAdGear's Ad Rotator. The Ad Rotator is a program that is run on eAdGear's website when investors log onto their accounts that "rotates" purported customer advertisements or websites. Investors are expected to view approximately 30 such ads for 15 seconds each day to be entitled to their share of the revenues supposedly generated from their collective efforts, which eAdGear calls the "surfing bonus." Even this easily met requirement was made easier by investors' use of auto-surfing programs that automatically surf the websites.

30. The second way investors supposedly share in eAdGear's "revenues" is when an investor's account is credited with a portion of the money generated from referrals of new investors.

31. Because of the multi-level, or pyramid, nature of eAdGear's business, an investor could earn a commission either from his or her direct sale of a business package to a new member, or through the sale to a new member by a person whom the investor had previously referred.

32. For instance, an investor who refers a new member could receive a "commission" valued at approximately 5, 10 or 15% of the new investors' package, depending upon both the size of the original investors' account, and the size of the new investors' investment. Further, if the second

COMPLAINT 5

investor thereafter referred another new member, both the original investor, and the second investor, could be credited with commissions, of varying amounts. Together, eAdGear may credit the accounts of the existing members in such a chain by a total of as much as 40% in commissions each time a new member makes an investment.

33. Many investors recruited their family members and friends, who then recruited their family members and friends, and so on.

34. Beginning in or around 2011 through the present, defendants have permitted numerous existing members to retain all of the cash raised from a referral; in exchange, eAdGear adjusts the accumulated balance in the existing investors' accounts by the same amount. eAdGear also then establishes new "accounts" for the newly-referred investors. As much as approximately $84 million has been raised from investors by this mechanism, thereby increasing eAdGear's liquidity and reducing its liability to investors. Moreover, eAdGear has thus been able to appear to be a successful investment, by having paid back its existing investors the approximately $84 million.

C. **Defendants Lure Investors By Touting Large Returns on Investments.**

35. In marketing materials, eAdGear claims that returns on investments valued at "thousands of dollars a day [are] possible." In describing the amount of return on investment that is possible, eAdGear's materials give the example of an investor named "Cathy," who in her first year purportedly turned an initial investment of $6,000 into a regular $180,000 per month return, and an accumulated annual return of $3.6 million.

36. Many new investors have been recruited by existing investors through word of mouth. And, many investors were recruited by Zhang. Zhang hosted meetings at investor's homes or in hotel conference rooms, and she traveled across the country and overseas to promote eAdGear.

37. During such presentations, Zhang projected eAdGear's compensation plan onto a screen, or detailed portions of it in a PowerPoint presentation, to describe how profits were supposedly calculated and distributed to investors. Zhang encouraged investors to view eAdGear's website after the meeting.

38. Zhang also demonstrated during her presentations how much her account had grown, by logging onto her eAdGear account and showing potential investors. Zhang portrayed herself as a

person who had been referred to eAdGear by an acquaintance, and who had earned remarkable returns through her own investment and successful recruitment of others.

39. Zhang frequently claimed that she had earned more than $1 million from her investment in eAdGear. In reality, Zhang has simply used her ability to control the flow of money into and out of eAdGear bank accounts, and her relationships with the other defendants, in order to receive payments that no other investor receives. For instance, Zhang has received so-called "special bonuses" that other eAdGear investors do not receive; these bonuses alone have amounted to an additional $1.1 million over what Zhang would have received under the compensation plan.

40. Zhang concealed from investors at such meetings that she was in fact a founder of eAdGear and was married to another founder, Wang, who was also the CEO. Zhang also concealed the fact that she diverted investor money to her own uses, including for the purchase of a home.

41. To enhance the fiction of eAdGear, in April 2012, defendants invited a group of approximately 50-60 investors from the New York and New Jersey area to eAdGear's offices in Pleasanton, California in which investors were given presentations about they could earn money through surfing on the Ad Rotator and by recruiting new investors. During the event, in response to questions posed to them, Wang and Yuen denied that eAdGear operated as a pyramid scheme but refused to provide investors with eAdGear's financial statements.

42. Defendants also use the eadgear.com website (and related websites and blogs that they also control) to describe the investment opportunity. Thus, Wang, Yuen and Zhang together created, and then posted on the eadgear.com website, a "compensation plan" that purports to govern the benefits that investors receive in return for the memberships or "business packages" they purchase.

43. The principal benefit investors receive upon making their investments is their allocation of so-called "ePoints"; ePoints are the means eAdGear uses to determine an investor's share of company revenues. Though business packages are offered at six different levels (at times, $300 has been the lowest, and $6,000 as the highest), the greater the initial account value, the more quickly such "ePoints" are credited to the account.

44. Once an investor has an eAdGear account, eAdGear credits the account with value based on the daily "surfing bonuses," and referral bonuses or commissions, to the extent the investor,

COMPLAINT 7

or others whom he has previously referred to eAdGear, makes a referral for a new investor. But rather than credit the accounts with actual money, eAdGear credits investors' accounts with so-called "eCash." Investors could convert a portion of the value of the "eCash" in their accounts – generally not more than 50% – into actual cash to withdraw. Investors are required to reinvest the remaining eCash to purchase additional ePoints and to thereby increase their investment in eAdGear. The required repurchase is but one means defendants used to manage eAdGear's increasing liability.

### D. Wang and Yuen Engage in Deceptions to Perpetuate the Fiction of eAdGear.

45. To create the appearance of a real business, Wang and Yuen directed eAdGear employees to place fake ads on the Ad Rotator – the program that eAdGear members interface with each day to view websites to supposedly increase those websites rankings on search engines like Yahoo! and Google. Wang and Yuen gave these directions so that members viewing the Ad Rotator would see notable, English-language advertisers and would therefore believe that eAdGear had succeeded in attracting paying customers.

46. As instructed, the eAdGear employees posted such advertisements on eAdGear's Ad Rotator, including, for instance, website links to Gap, Inc., Victoria's Secret, and Target Corporation.

47. None of these companies had business dealings with eAdGear. In reality, eAdGear did not succeed in attracting paying customers to place their ads on the Ad Rotator.

48. To further the fiction of a profitable business from which investors would enjoy profits, eAdGear's website and marketing materials claimed eAdGear shared 70% of its so-called "revenues" or "income" or "profit" (which defendants used interchangeably) with investors daily. In reality, eAdGear had no "revenues" or "income" or "profit" in that it had no real business; it simply had money that it had raised from investors. Wang and Yuen dictated how much of the promised "revenue" or "income" or "profits" would be cycled back into investors' accounts each day

49. Thus, though defendants claimed to share 30% of the so-called revenue daily with investors, Wang and Yuen instructed employees at eAdGear to use different percentages of capital raised each day to set the "surfing bonus." Wang and Yuen specifically chose different percentages in order to smooth out payouts and project to investors an appearance of a stable business.

50. As a result of Wang and Yuen's daily manipulation of the supposed "surfing bonus," at various times defendants have credited investor accounts with more than 70% of amounts defendants collected to make eAdGear appear stable and profitable, and they have also credited accounts with less than 70% of the amounts collected in order to maintain an adequate amount of reserves in the company. For instance, in May 2012, eAdGear paid out more in referral and surfing bonuses than the company actually raised from investors.

E. **Wang, Yuen, and Zhang Misappropriated Investor Funds for Personal Use.**

51. Wang, Yuen and Zhang have misappropriated more than $3 million of investor funds for their own use, including more than $1.7 million in eAdGear funds that Wang, Yuen, and Zhang used for the purchase of two homes.

52. In particular, during August and September 2012, Wang and Zhang diverted approximately $1,060,000 of eAdGear investor money to purchase real estate in New Jersey, which they then lived in as their personal residence. Through a series of circuitous transactions, Wang disguised transfers from bank accounts in the name of eAdGear Holdings Limited to other accounts, which were ultimately paid to the title company handling the purchase of the real estate.

53. Wang and Yuen tried to cover up the diversion of company funds to purchase their new homes by routing funds through multiple accounts here in the United States and overseas.

54. Wang also arranged to disguise in eAdGear's accounting records the transactions in which the investor funds were transferred to purchase the home. He arranged to characterize the largest portion of the funds transferred as an investment in a Chinese company. The remainder was called a "loan" to him, and then purporting to pay back the so-called "loan" in January 2013, using a further transfer to him of investor funds that was falsely accounted for by eAdGear as a "profit sharing payment."

55. Similarly, in late July 2012, Yuen and Chan purchased real estate in Dublin, California using approximately $690,000 that they diverted from eAdGear investor funds in a series of transfers. But like the transfers to Wang and Zhang for their real estate purchase, Yuen arranged for the funds to follow a circuitous path, including by initially moving much of the money to a bank account in the name of an overseas company ostensibly controlled by Chan's relations.

56. Wang, Yuen, and Zhang also misappropriated an additional $1.3 million in investor funds by directing those funds to their own personal bank accounts. While soliciting investors, Zhang instructed them to write personal checks to her name or the name of the company she owns with Wang, Express Consulting. These checks were deposited into her own bank account or the bank account of Express Consulting. In addition, Wang, Yuen, and Zhang made other cash deposits into their personal bank accounts resembling amounts paid to eAdGear by investors for "memberships."

F. **eAdGear Is on the Verge of Collapse but Seeks Additional Investments.**

57. As of April 2014, eAdGear, Inc. had approximately $370,000 in its bank accounts. Also, eAdGear's CEO acknowledged owing investors approximately $5 million as of that point, although the true amount the defendants owe investors is far higher.

58. Investors have complained to eAdGear that they are unable to withdraw any money from their accounts. Certain investors have attempted, without success, to retrieve their investments from eAdGear or to obtain an explanation from eAdGear as to whether or not it will fulfill its promises.

59. Recognizing the precarious position of eAdGear, Wang and Yuen plan to raise additional funds chiefly by continuing to sell eAdGear business packages to investors worldwide, especially investors in Taiwan, China and China.

60. Toward that end, eAdGear.com and defendants' related websites and blogs continue to advertise the opportunity to invest with eAdGear, based upon the false premises and using the same, or similar, misleading claims, described herein. Similarly, defendants continue to solicit investors through direct solicitations, and encourage others to do the same.

61. Since approximately September 2013, Wang and Yuen have also informed certain investors that eAdGear plans a public offering of its securities on the Toronto Stock Exchange, and eAdGear has engaged financial and legal advisors to assist it in this process.

62. Indeed, from approximately September 2013 through February 2014, in purported preparation for the offering of its securities on the Toronto Stock Exchange, eAdGear raised from 133 investors in Taiwan, China and the United States an additional $2.8 million, in exchange for 5.6% of the equity of eAdGear Holdings Limited.

63. From approximately December 2010 through the present, defendants have not attempted to determine whether investors are financially qualified, or have sufficient investment experience, to invest in a private offering of securities. Indeed, numerous persons who have invested in eAdGear would not qualify as accredited or sophisticated investors, as those terms are used in the securities laws.

64. From approximately December 2010 through the present, in the sales of securities of eAdGear as "business packages" or memberships, including through the eAdGear.com website and in personal solicitations, investors are not provided with financial statements from eAdGear. Defendants also have not filed a registration statement with the Commission regarding the securities offered or sold.

G. **Wang, Yuen, and Zhang Knowingly Engaged in the Fraud Together.**

65. From eAdGear's inception in or around December 2010, through the present, Wang, Yuen and Zhang each knew, or were reckless in not knowing, that eAdGear's business model and its sales of memberships on the premise that eAdGear operated a legitimate business acted as a fraud and deceit upon its investor members. Wang, Yuen, and Zhang each know, or are reckless in not knowing, that eAdGear's practically exclusive source of funds is the money paid by members.

66. Wang, Yuen, and Zhang each knew or were reckless in not knowing, at the time they made false or misleading statements or material omissions of fact described above, that their statements or omissions were misleading to investors. For example, Wang and Yuen each knew or were reckless in not knowing that their denials, in April 2012 to investors during the Pleasanton event, that eAdGear operated a pyramid scheme were false and misleading. Similarly, Zhang knew that her claims made to solicit investors in meetings at their homes, or elsewhere, about the amount of money she purportedly earned as an eAdGear member, and the means by which she had obtained the money she had, were false and misleading.

67. Both eAdGear, Inc. and eAdGear Holdings Limited are controlled by Wang and Yuen, as the entities' officers and directors. Wang and Yuen at times use the two entities interchangeably, determining on an ad hoc or arbitrary basis whether to direct investor money to one entity or to another.

68. In particular, Wang and Yuen control the bank accounts into which investor money is deposited. They also manage eAdGear's operations and control the content of eadgear.com, and the related websites and blogs. Wang and Yuen also review eAdGear's cash balances on a daily basis to determine the amounts that eAdGear can pay to investors or credit to their accounts. Wang and Yuen also periodically review other financial statements for eAdGear.

69. Zhang received emails stating that eAdGear's sole source of funds was the sale of "business packages" or memberships. For instance, in March 2011, she received a draft of a speech from Wang that stated that all of eAdGear's revenues were generated from the sale of these "packages." A later revised version of the speech that is posted to eAdGear's blog omits this sentence and discusses eAdGear's "revenue" projections instead.

70. From early 2011 through the present, Wang, Yuen and Zhang have each also been notified or apprised of the illegal pyramid nature of eAdGear by persons not employed by eAdGear.

71. For instance, in or around April 2011, eAdGear's payment processor, PayPal, notified eAdGear staff that it had suspended eAdGear's account because it appeared that eAdGear was operating a multi-level marketing scheme in contravention of PayPal's Acceptable Use Policy. This notification was forwarded to Wang, Yuen, and Zhang.

72. In another such example, in or around April 2012, Wang and Yuen sought the legal advice of a multi-level marketing attorney, who informed them that unless at least 20% of their revenues were being generated from third-party customers, the company's business model would not be legal in the United States.

73. In another such instance, in or around March 2013, a Hong Kong, China auditor that had been retained to audit eAdGear Holdings Limited's financial statements requested, in a message forwarded to Yuen, an explanation as to why eAdGear would not be considered a "pyramid scheme."

### FIRST CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 by All Defendants)**

74. Paragraph numbers 1 through 73 are re-alleged and incorporated herein by reference.

75. Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of

interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: employed devices, schemes, or artifices to defraud; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)], and unless restrained and enjoined will continue to violate these provisions.

76. Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. §§ 240.10b-5(b)], and unless restrained and enjoined will continue to violate these provisions.

### SECOND CLAIM FOR RELIEF

**(Control Person Violations Under Exchange Act Section 20(a) against Wang and Yuen for Entity Defendants' Violations of Section 10(b) of the Exchange Act and Rule 10b-5)**

77. Paragraph numbers 1 through 73 are re-alleged and incorporated herein by reference.

78. Defendants eAdGear, Inc. and eAdGear Holdings Limited, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

79. Defendants Wang and Yuen, as set forth above, participated in the day-to-day affairs of eAdGear, Inc. and eAdGear Holdings Limited, and they each had the power to control both

entities' actions. Wang and Yuen each determined, on an ad hoc or arbitrary basis, which of the entity defendants would engage in a given corporate action, including the acceptance of investor money, or the transfers of investor money from the entity bank account to other persons. Wang and Yuen also each transferred money between the entities as they saw fit, on an ad hoc or arbitrary basis. Wang and Yuen were each involved in, and directed, many of the improper actions, deceptions, misrepresentations and omissions in which eAdGear, Inc. and eAdGear Holdings Limited engaged, including the operation of a pyramid scheme through both entities, the fraudulent solicitation of investments, the making of misrepresentations particularly in the eadgear.com website and in materials posted on the website and related websites, and in meetings with investors, all as described above.

80. By reason of the foregoing, Wang and Yuen are each liable as a control person for eAdGear, Inc.'s and eAdGear Holdings Limited's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5] and unless restrained and enjoined will continue to violate these provisions.

81. Accordingly, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], Wang and Yuen are each jointly and severally liable with and to the same extent as eAdGear, Inc. and eAdGear Holdings Limited.

## THIRD CLAIM FOR RELIEF

### (Violations of Section 17(a) of the Securities Act by All Defendants)

82. Paragraph numbers 1 through 73 are re-alleged and incorporated herein by reference.

83. Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited have, by engaging in the conduct set forth above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails: (1) with scienter, employed devices, schemes, or artifices to defraud; (2) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (3) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

84. By reason of the foregoing, Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited have directly or indirectly violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and unless restrained and enjoined will continue to violate these provisions.

### FOURTH CLAIM FOR RELIEF

**(Violations of Sections 5(a) and 5(c) of the Securities Act by All Defendants)**

85. Paragraph numbers 1 through 73 are re-alleged and incorporated herein by reference.

86. Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited, by engaging in the conduct described above, directly or indirectly, made use of means or instruments or transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

87. No registration statement has been filed with the SEC or has been in effect with respect to any of the offerings or securities alleged herein, and no exemption from registration applies.

88. By reason of the foregoing, Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited have violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

### FIFTH CLAIM FOR RELIEF

**(Relief Defendant)**

89. Paragraph numbers 1 through 73 are re-alleged and incorporated herein by reference.

90. As set forth above, in or around July 2012, Chan purchased, together with her husband, Defendant Yuen, real property in Dublin, California. To purchase the real property, Defendant Yuen arranged, through a series of transactions, for approximately $690,000 in funds that had been obtained from eAdGear investors to be transferred ultimately to the title company that handled the closing on the purchase of the real property. Upon the completion of the purchase, Relief Defendant Chan and Defendant Yuen have since used the real property as their personal residence. Relief Defendant Chan and Defendant Yuen have no legitimate claim to the funds used to purchase the real property.

91. Defendants eAdGear, Inc., eAdGear Holdings Limited and Yuen have each transferred to Relief Defendant Chan money derived from the Defendants' fraud described in this Complaint, to which Relief Defendant Chan has no legitimate claim.

92. Defendant Yuen and Relief Defendant Chan share joint bank accounts and other assets derived from the Defendants' fraud described in this Complaint, to which Relief Defendant Chan has no legitimate claim.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Enjoin Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited temporarily, preliminarily, and permanently from directly or indirectly violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### II.

Enter an Order temporarily, preliminarily, and permanently enjoining Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited from directly or indirectly participating in the issuance, offer, or sale of any security of any entity controlled by, or under joint control with, any of them, including but not limited to securities described as "business packages" or "memberships" marketed by defendants or any of them, including through the websites controlled by any of them, as well as the acceptance of any money or anything of value by any defendant for such securities.

### III.

Enter an Order temporarily, preliminarily, and permanently enjoining Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited from directly or indirectly soliciting any person or entity to purchase or sell any security.

### IV.

Enter an Order freezing the assets pending final judgment of Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited, and of Relief Defendant Laurata P. Chan in specified

assets or accounts obtained through the fraud alleged herein or jointly owned with Defendant Yuen, including the requirement that Defendants and Relief Defendant repatriate all funds obtained through the fraud that were sent to, or deposited into, any offshore accounts.

V.

Enter an Order prohibiting Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited from destroying documents; permitting expedited discovery; and requiring accountings from Defendants eAdGear Holdings Limited and eAdGear, Inc.

VI.

Enter an order barring Defendants Wang, Yuen, and Zhang from serving as officers and directors of a public company pursuant to Section 20(e) of the Securities Act, 15 § U.S.C. 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

VII.

Enter an Order requiring Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited and Relief Defendant to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon.

VIII.

Enter an Order requiring Defendants Wang, Yuen, Zhang, eAdGear, Inc. and eAdGear Holdings Limited to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

IX.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

X.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated: September 24, 2014

Respectfully submitted,

*/s/ Jessica W. Chan*

JESSICA W. CHAN
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION